## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re MERRILL LYNCH & CO,　　　Master File No.
INC. SECURITIES, DERIVATIVE　　07cv9633 (LBS)(AJP)(DFE)
AND ERISA LITIGATION

---

**This Document Relates to:**

**Derivative Action**　　　　　　　**Civil Action No.**
**07cv9696(LBS)(AJP)(DFE)**　　　**08cv6582 (LBS)(AJP)(DFE)**
**and**
**N.A. Lambrecht v. O'Neal et al**
**08cv6582 (LBS)(AJP)(DFE)**

---

## PLAINTIFF LAMBRECHT'S OBJECTION TO THAT PORTION OF THE CONSOLIDATION ORDER OFMARCH 12, 2008 WITH RESPECT TO LEADERSHIP OF THE DERIVATIVE ACTIONS

## <u>TABLE OF CONTENTS</u>

**Background**…………………………………………………………………..1

**Plaintiff Lambrecht's "Demand Made" Case is
Legally and Factually Distinct from the Previously
Filed "Demand Futile" Cases**…………………………………………………4

**Material Differences Between "Demand Made"
and "Demand Futile" Cases Render Them
Inappropriate for Consolidation**………………………………………………7

**The Consolidated Derivative Complaint  Does
Not Comply With The Demand Requirements of Rule 23.1**…………………12

**There is no PSLRA-Related Requirement for a
Lead Plaintiff in Derivative Litigation**………………………………………14

**The Number of Co-Lead Counsel**………………………………………………15

**Merrill Lynch's Views on the Issues Presented are not Relevant**……………16

**Contemporaneous Time and Expense Reports
Should Be Submitted to Lead Counsel Monthly**………………………………17

**Conclusion**…………………………………………………………………..18

**Certificate of Service**………………………………………………………20

## <u>PLAINTIFF LAMBRECHT'S OBJECTION TO THAT PORTION OF THE CONSOLIDATION ORDER OFMARCH 12, 2008 WITH RESPECT TO LEADERSHIP OF THE DERIVATIVE ACTIONS</u>

### <u>Background</u>

Plaintiff N.A. Lambrecht objects to the nature of the consolidation of her shareholder's derivative Complaint with and as part of the Consolidated Derivative Action (and the Consolidated Derivative Complaint therein) and other provisions of the Court's Order of March 12, 2008 (the "Order"). Plaintiff's objection is based on the simple, but exceedingly important fact, that her circumstances are legally distinct from those of the other derivative plaintiffs, notwithstanding the fact that all of the derivative actions are based upon the same nucleus of operative facts. For this reason, plaintiff Lambrecht does not oppose the coordinated prosecution and defense of the derivative claims generally, as more fully explained below.

Unlike the three pre-existing plaintiffs whose counsel failed to make pre-suit demands as required by Federal Rule of Civil Procedure 23.1 and could not provide adequate reasons why they did not do so when demand was clearly warranted,[1] plaintiff did so and did it professionally and with full notice to the Board of Directors of Nominal Defendant, Merrill Lynch & Co., Inc. ("Merrill Lynch"). A copy of the letter sent to Merrill Lynch's Board by one of plaintiff

---

[1] The Consolidated Derivative Complaint is the subject of a pending Motion to Dismiss principally due to the fact that plaintiffs' various counsel in the three derivative cases could have followed Rule 23.1, but chose not to, and instead filed suit first and decided to deal with the consequences later, as they now must do. Their Consolidated

Lambrecht's counsel, Richard D. Greenfield, Esquire, on January 22, 2008 is

attached as an exhibit to her Complaint and submitted herewith as Exhibit "A."

As indicated above, there are pending three "demand futile" derivative

cases. Plaintiffs' counsel in those cases have self-organized and, *de facto*, have

consented to the consolidation of the various related derivative cases encompassed

by the Order. These three law firms have designated themselves as an "Executive

Committee" in the Derivative Actions with the firm of Brower Piven designated as

Liaison Counsel. The Court "So Ordered" counsel's designations as one part of the

more comprehensive Order which, *inter alia*, consolidated related securities,

ERISA and derivative cases.

On August 1, 2008, pursuant to ¶20 of the Order, counsel for Nominal

Defendant Merrill Lynch & Co., Inc., provided a copy of the Order to plaintiff

Lambrecht's counsel. Paragraph 20 of the Order states:

> Each new case that arises out of the subject matter of either the
> Securities Action, the Derivative Action or the ERISA Action which
> is filed in, or transferred to, this Court, shall be consolidated with the
> Securities Action, the Derivative Action or the ERISA Action,  as
> appropriate, and this Order shall apply thereto, unless a party objects
> to consolidation, as provided for herein, or any provision of this
> Order, within ten (10) days after the date upon which a copy of this
> Order is served on counsel for such party, by filing an application for
> relief and this Court deems it appropriate to grant such application.

---

Complaint is thus vulnerable to immediate dismissability on this ground alone, while the *Lambrecht* Complaint is
not.

By the instant filing, for the reasons stated below, plaintiff Lambrecht objects to the consolidation of her derivative action with the actions of the three other derivative plaintiffs who failed to make pre-suit demands under and pursuant to Rule 23.1 (the "Demand Futile Plaintiffs"), which actions are vulnerable to summary dismissal, and objects, in particular, to the leadership structure approved by the Court as set forth at ¶5 of the Order.

The significance of plaintiff Lambrecht's written demands on Merrill Lynch's Board cannot be minimized, as set forth more fully in the Motion to Dismiss addressed to the Consolidated Derivative Complaint referred to below. Having taken a wholly diverse position as to whether Merrill Lynch's Board should have been, in the first instance, given the opportunity to act on a shareholder's demands or not, plaintiff Lambrecht proceeds to litigate this case on a much stronger foundation than the three "Demand Futile Plaintiffs." In addition, because of the plaintiffs' material differences in strategic approaches to the claims being asserted derivatively, plaintiff Lambrecht cannot properly consent to her Complaint being swallowed up by the highly vulnerable Consolidated Derivative Complaint or being, *de facto*, represented or even lead by the self-designated "Executive Committee."

**Plaintiff Lambrecht's "Demand Made" Case is Legally and**
**Factually Distinct from the Previously Filed "Demand Futile" Cases**

Although all presently filed actions implicated by this motion are derivative actions asserted on behalf of Merrill Lynch against, among others, certain of its directors and officers. Plaintiff Lambrecht's "Demand Made" case raises completely different core legal issues, with a different factual focus from those raised in the three previously existing cases. This fundamental difference stems from the fact that the "Demand Futile" Consolidated Derivative Complaint states that no pre-suit demand was made upon Merrill Lynch's Board, while Plaintiff Lambrecht made the pre-suit demands required by Rule 23.1, which demands were subsequently wrongfully refused by the Board. Under Delaware law, which is the state of Merrill Lynch's incorporation:

> The focus of a complaint alleging wrongful refusal of demand is different from the focus of a complaint alleging demand futility. The legal issues are different; therefore, the legal standards applied to the complaints are necessarily different. A shareholder plaintiff, by making demand upon a board before filing suit, "tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel v. Buntrock,* 571 A.2d 767, 777 (Del. 1990). When a shareholder files a derivative suit asserting a claim of demand futility, hence demand excused, the basis for such a claim is that the board is (1) interested and not independent; and (2) that the transaction attacked is not protected by the business judgment rule. *Aronson v. Lewis,* 473 A.2d 805, 814 (Del. 1984).

*Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991); *see also Grobow v. Perot,* 1988 De. Ch. LEXIS 152 at *10-11 (Del. Ch. November 25, 1988) (pivotal focus in demand excused case is the claimed wrongfulness of the underlying challenged transaction, while in demand refused action, focus in on wrongfulness of response to stockholder demand). "Demand Made" cases necessarily focus on the wrongful nature of a Board decision **that is not even at issue** in the three pre-existing "Demand Futile" cases, namely the Merrill Lynch Board's decision to reject pre-suit demands made by shareholders of Merrill Lynch.

It should be noted that plaintiff Lambrecht's Demand letter, specifically disclaimed the purported independence or disinterestedness of Merrill Lynch's Board:

> The demands made herein and the fact that they have been made should not be taken to mean that any of you is independent, dis-interested or can properly and objectively deal with such demands, which you cannot. Each of you is personally implicated in the alleged wrongdoing by, *inter alia*, your failure to date to cause Merrill to appropriately pursue all of its claims arising from the matters referred to herein.

It should come as no surprise to anyone that in multi-plaintiff litigation, there will be different claims, different defendants, and indeed, different approaches to the prosecution of the cases. Although it is important, as the Court recognized in signing the tendered Order, to have a structure in place, so that plaintiffs' combined efforts can be properly directed, irreconcilable differences

among plaintiffs and their counsel must be resolved. Plaintiff Lambrecht's

proposed Derivative Action Consolidation Order submitted herewith as Exhibit

"B" ("Proposed Order") recognizes that "one size" does not fit all.

With respect to the issue of leadership, while there is little doubt that all plaintiffs'

counsel can work effectively and efficiently to represent the various interests

involved in this litigation, plaintiff Lambrecht urges the Court to appoint one of her

counsel, Richard D. Greenfield, Esquire, as one of the Co-Lead Counsel for all

derivative plaintiffs together with one member of the so-called "Executive

Committee" as a Co-Lead Counsel. Biographical material with respect to Mr.

Greenfield is submitted herewith as Exhibit "C."[2]  Plaintiff Lambrecht respectfully

contends that her principal counsel fully meets the widely recognized criteria for

appointment as lead counsel. Courts have recognized that the "principal factor to

be considered in making such selection is whether the appointment will serve the

best interests of the shareholders." *Katz v. Clitter*, 396 N.Y.S.2d. 388, 389 (N.Y.

App. Div., 1977) (internal citations omitted). With this in mind, courts have

considered such factors as: "the quality of the pleading that appears best able to

represent the interests of … the derivative plaintiffs"; "the willingness and ability

of all the contestants to litigate vigorously on behalf of an entire class of

shareholders"; and "the enthusiasm or vigor with which the various contestants

have prosecuted the lawsuit." *Hirt v. U.S. Timberlands Service Co., LLC,* 2002 Del. Ch. LEXIS 89 at *5 (Del. Ch. July 3, 2002). Similarly, the credentials of counsel and their experience in similar litigation have figured prominently in such determinations. *See Katz, supra; Sirota v. Solitron Devices, Inc.,* 1975 US DIST Lexis 12471 (S.D.N.Y. 1975)*; In re Conseco, Inc. Securities Litigation and In re Conseco, Inc., Derivative Litigation,* 120 F. Supp.2d 729, 735 (S.D. Ind. 2000).

## Material Differences Between "Demand Made" and "Demand Futile" Cases Render Them Inappropriate for Consolidation

Federal Rule of Civil Procedure 42(a) governs issues relating to consolidation of actions for trial or pretrial purposes. It provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

In considering consolidation, the Court has broad discretion to balance considerations of convenience and economy against the potential for prejudice to any party. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990). The Second Circuit has repeatedly cautioned against "the systemic urge to aggregate litigation." *In re Repetitive Stress Injury Litigation*, 11 F.3d 368. 373 (2d Cir. 1993) (internal quotations omitted); *In re Brooklyn Navy Yard Asbestos Litigation,*

---

[2] Mr. Greenfield has more than 35 years of litigation experience specializing in shareholder derivative and class litigation. He is a former member of the Board of Directors of a NYSE-listed bank holding company who has lectured on corporate governance and related disclosure issues, which are at the core of this case.

7

971 F. 2d 831, 853 (2d Cir. 1992), and has directed that courts must "examine the special underlying facts with close attention before ordering a consolidation." *In re Repetitive Stress Injury Litigation,* 11 F.3d at 373 (internal quotations omitted).

The burden is on the proponent of consolidation to persuade the Court that such treatment is warranted. *MacAlister v. Guterma,* 263 F. 2d 65, 70 (2d Cir. 1958) (denying pretrial consolidation of three stockholder derivative actions); *Solvent Chemical Co. ICC Industries, Inc. v. E.I. Dupont De Nemours & Co.,* 242 F. Supp.2d 196, 221 (W.D.N.Y. 2002). The proponent "must bear the burden of showing the commonality of factual and legal issues in different actions" sufficient to support "precise findings … justifying consolidation." *In re Repetitive Stress Injury Litigation,* 11 F.3d at 373. When the proponent fails to demonstrate that consolidation is warranted, particularly where the party opposing consolidation shows that prejudice would result, consolidation should be denied. *See Schacht v. Javits,* 53 F.R.D. 321, 325 (S.D.N.Y. 1971) (Plaintiff's failure to marshal facts supporting consolidation and the reasoned opposition by four of the defendants are persuasive grounds for denying the motion."); *State Mutual Life Assurance Company of America v. Peat, Marwick, Mitchell 7 Co.,* 49 F.R.D. 202, 210 (S.D.N.Y. 1969) ("[D]espite the desirability of consolidation, it should not be granted where prejudice may result to one or more of the parties.") (internal citation omitted); *Bascum Launder Corp. v. Telecoin Corp.,* 15 F.R.D. 277, 277

(S.D.N.Y. 1953) ("A consolidation of actions may not be granted where it may result in prejudice to one or more of the parties."). Courts have repeatedly recognized that where, after the entry of an order of consolidation, circumstances arise that show prejudice to an affected party, such prejudice may be rectified by appropriate action by the Court. *See, e.g., Fireman's Ins. Co. of Newark, New Jersey v. Keating,* 753 F. Supp. 1137, 1141 (S.D.N.Y.1990); *Katz v. Realty Equities Corporation of New York,* 521 F.2d 1354, 1361 (C.A.N.Y. 1975) (noting, in refusing to overturn district court order requiring consolidated complaint, that district court should "be alert to the possibility of prejudice to them [the objective party] in the future.").

Plaintiff Lambrecht respectfully submits that mandatory consolidation of her case with the "Demand Futile" cases, using the Consolidated Derivative Complaint, would result in exactly the kind of material prejudice these courts warned against.

In two cases that have been litigated within this District, Judges Kram and Sprizzo, respectively, recognized the important distinctions between "demand made" and "demand futile" cases, *In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*, MDL Docket No. 1500  (SDNY), where shareholder plaintiffs who had made demands were given two out of three Lead Counsel positions and *In re Freddie Mac Litigation*, MDL No. 1584 (SDNY), where the shareholder who

argued demand futility and filed its action had it dismissed on demand grounds while the shareholders who had made demands were not even subjected to motions to dismiss. In *AOL Time Warner*, Judge Kram had originally signed an unopposed Pre-Trial Order No. 1 ("PTO No. 1") substantively identical to the *pro forma* consolidation Order provided by counsel to the Court in this litigation. Once a "Demand Made' case was filed by two  AOL Time Warner shareholders who had made demands on its Board of Directors, counsel for the new plaintiffs found the original PTO No.1 unacceptable for  the same legal and factual reasons as are present here. They then sought, by litigated motion, to request that the Court modify PTO No. 1, which it did. Judge Kram's Pretrial Order No. 2 dated May 26, 2004 granted the motion of the "Demand Made" plaintiffs, and is submitted herewith as Exhibit "D."

Judge Kram segregated the "Demand" cases from the "No Demand" cases and appointed separate Lead Counsel for each type of derivative case. Further, in Paragraphs 17 and 18 of her Order, she recognized the important substantive and procedural differences each type of derivative case brought forth.

In an earlier iteration of *Freddie Mac*, a similar case based upon allegations of serious financial wrongdoing comparable with the defendants' activities in the instant litigation, Judge Cacheris (*Henry v. Brendsel*, Case No. 03-1539A (E.D. Va. March 12, 2004)) also ordered separate Lead Counsel for the different types of

10

derivative claims brought against the senior officers and directors of Freddie Mac. In his Order Appointing Lead Plaintiffs and Lead Counsel of March 12, 2003, (submitted herewith as Exhibit "E"), Judge Cacheris appointed separate "Demand Excused" (*i.e.* "Demand Futile") Lead Plaintiff and Lead Counsel, and "Demand Made" Lead Plaintiff and Lead Counsel, to reflect the divergent positions of the different plaintiffs and their respective counsel.

Since plaintiff Lambrecht is the only one of the Merrill Lynch shareholders who commenced derivative suits to have made a demand on its Board of Directors as required by Rule 23.1, she obviously stands in a different and, indeed, superior, position to each of the Demand Futile Plaintiffs, who are vulnerable to summary dismissal due to their failure to have made pre-suit demands upon Merrill Lynch's Board appropriate to this litigation. Such vulnerability, in fact, is precisely what was manifested in the *Freddie Mac* cases in this District before Judge Sprizzo, where the Court dismissed the Complaint of the plaintiff who had failed to make a demand on Freddie Mac's Board leaving in place the Complaint filed by the shareholders who had made the required demand.[3] In addition, there are important threshold legal and discovery issues that distinguish the two types of cases rendering them in conflict with one another, at least at this stage of the litigation.

---

[3] After such dismissal and after making the required demand on Freddie Mac's Board, months later, the formerly "demand futile" plaintiff, being enlightened by the Court, filed a new Complaint based on the demand made in the interim. Should this Court dismiss the Consolidated Derivative Complaint in this litigation due to the plaintiffs therein having failed to make the required demands, should they become similarly enlightened and make demands

While those plaintiffs whose complaints survive motions to dismiss can ultimately work together to pursue their common objectives, there is a legal impediment at this juncture in them doing so.

## The Consolidated Derivative Complaint  Does Not Comply With The Demand Requirements of Rule 23.1

The Consolidated Derivative Complaint argues futility as the purported reason why the Demand Futile Plaintiffs did not make the required demands on Merrill Lynch's Board. Plaintiff Lambrecht's well-considered strategic decision to make the required demand in these circumstances would be rendered a nullity if her Complaint were to be swallowed whole by the Consolidated Derivative Complaint. Her claims, despite her having made the required demand, would be rendered vulnerable to dismissal in the face of the pending Motion to Dismiss. She is entitled to have her Complaint considered on its own merits and not be effectively eradicated by the provisions of the Order which, *de facto*, would render it a nullity if her requested relief from the Order is not granted. While there is little doubt that a consolidated complaint which pleads the demand-related issues and facts **in the alternative** can be filed by all of the derivative plaintiffs that encompasses plaintiff Lambrecht's firmly held position, to say the least it would be awkward to do so given the conflicting positions she must take from the positions

on Merrill Lynch's Board, they will be free to file Complaints anew but many months in the future. Plaintiff Lambrecht is not so burdened and is prepared to move forward aggressively with her case immediately.

espoused by the other plaintiffs with respect to the issue of demand and the "facts" they argue as why demand on Merrill Lynch's Board was excused at the time they filed their respective Complaints. Plaintiff Lambrecht's Complaint should remain unconsolidated and rise or fall on its own merits.

## The Fact That the Demand Futile Plaintiffs' Actions were "First Filed" is Irrelevant to a Determination of Appointment of Lead Counsel

Case law is clear: the fact that the Demand Futile Plaintiffs commenced their derivative actions first should carry no weight in deciding the issue of appointment of lead counsel. *See Sirota,* 1975 US DIST Lexis 12471 at *4 (a rule giving priority of filing primary weight in selection of lead counsel would promote premature filing of suits without adequate investigation; court allows plaintiffs counsel in two of four actions to act as joint "general counsel"); *Hirt,* 2002 Del. Ch. LEXIS 89 at *5 (Del. Ch. July 3, 2002) (in selection of lead counsel, no special weight or status will be accorded to a lawsuit simply by virtue of having been filed earlier than any other pending action); *TCW Technology Limited Partnership v. Intermedia Communications, Inc.,* 2000 Del. Ch. LEXIS 147 at *9 (Del. Ch. October 17, 2000) ("It is not the race to the courthouse door… that impresses the members of this Court when it comes to deciding who should control and coordinate litigation of behalf of the shareholder class.").

This common sense analysis is further buttressed by two important facts here. One obvious fact is that the three Demand Futile Plaintiffs commenced their

cases within a very short period of time and apparently based upon revelations in the news media. A second fact is that the Order as presented to the Court neglected to give consideration to the complexities that surround shareholder derivative litigation. The Proposed Order submitted herewith addresses such complexities as well as the divergent issues relevant to the "Demand Futile" cases and the Lambrecht, "Demand Made," case.

## There is no PSLRA-Related Requirement for a Lead Plaintiff in Derivative Litigation

Although there clearly are a few courts around the country which have appointed lead plaintiffs and, in some cases, have followed the congressional mandate of the PSLRA, the simple fact of the matter is that the PSLRA does not govern derivative litigation, nor is there anything that would indicate that there was any legislative intent to govern shareholder derivative litigation in the same fashion. Indeed, while it is certainly appropriate for the Court to give due consideration to the presence of institutional plaintiffs and their counsel among a multiplicity of cases and lawyers, the simple fact of life is that most shareholders of public companies are more modest in their holdings. More significantly, especially since all of the shareholder plaintiffs and their counsel are before the Court, the Court should look to which counsel are most experienced and have the resources and appropriate level of dedication to represent the interests of Merrill

14

Lynch and its shareholders in pursuing the varied claims that Merrill Lynch's Board will not pursue on its own.

As indicated in the attached biography, counsel for Ms. Lambrecht is well-qualified to represent those interests. Further, despite any possible concern that counsel for the Demand Futile Plaintiffs cannot work together with counsel for plaintiff Lambrecht, the Court-appointed derivative Liaison Counsel, Brower Piven firm and its predecessors have been co-counsel with Mr. Greenfield in many shareholder cases and there is little doubt they can work together toward common objectives in this litigation if the Demand Futile Plaintiffs' Complaint survives the Motion to Dismiss.

## The Number of Co-Lead Counsel

It is clear that in any complex litigation such as the various Merrill Lynch shareholder cases, there is no "magic number" of lead counsel. Indeed, the Court has appointed three Co-Lead Counsel for the Securities Actions and two Interim Co-Lead Counsel for the ERISA Actions. The important thing for the Court to consider is whether the designated Co-Lead Counsel (if the Demand Futile Plaintiffs' claims survive), whatever their differences, will be able to work together toward their common objective and effectively deal with defense counsel and the Court.

Plaintiff Lambrecht, through both of her counsel, Greenfield & Goodman, LLC and Cuneo, Gilbert & LaDuca, LLP, have creatively and aggressively pursued the interests of Merrill Lynch and its shareholders. Plaintiff Lambrecht has not filed quickly drafted Complaints which paraphrased newspaper articles, as the Demand Futile Plaintiffs appear to have done. Her counsel have conducted substantial pre-litigation research as evidenced by her Demand Letter, have interviewed knowledgeable people and focused on the issues that are most significant to the case. More significantly, plaintiff Lambrecht has filed a Complaint which is not vulnerable to dismissal on either demand or any other grounds.[4]

## Merrill Lynch's Views on the Issues Presented are not Relevant

Although all derivative plaintiffs are suing on behalf of Merrill Lynch in the litigation, their interests are not coextensive with those of Merrill Lynch as a Nominal Defendant since, *inter alia*, the Company is still within the control of practically all of the directors who have been accused of wrongdoing in all of the derivative cases. Indeed, all derivative plaintiffs, despite the fact that they are pursuing claims on behalf of Merrill Lynch, find themselves in the curious position of facing Merrill Lynch itself seeking to put an end to the very claims that could generate substantial recoveries for it.

_____

Realistically, Merrill Lynch should not be permitted to opine on who should be principal opposing counsel or which Complaint should be the operative one. Merrill Lynch, its officers and directors clearly want to defend against the most vulnerable plaintiffs with the weakest Complaint. All defendants, however, are entitled to have as opposing counsel lawyers with whom they can litigate cooperatively and efficiently. In that regard, consistent with the mandate of PTO No. 2 in *AOL Time Warner*, the undersigned have already made progress in discussing with counsel for Merrill Lynch's Board how the derivative cases can be litigated efficiently and productively with minimum burden on the Court. Beyond the right to have an orderly litigation, however, neither Merrill Lynch, nor its defendant Board members should have any role in determining who should be best able to prosecute the Company's claims derivatively and who should be appointed by the Court as opposition counsel.

## Contemporaneous Time and Expense Reports Should Be Submitted to Lead Counsel Monthly

In multi-plaintiff litigation such as this, where there are already many plaintiffs' counsel, lawyer time and expenses will escalate at a diametric rate. To better avoid unnecessary escalation, it is important for plaintiffs' Lead Counsel to monitor time and expenses on a regular basis. This helps to point out potential duplicative and/or otherwise wasteful expenditures of time and money, which will be hard to recognize after two, three or more years of litigation. While interim

Court supervision of time and expenses of plaintiffs' counsel should not be necessary, the possibility of it is a useful deterrent to over-billing, even when inadvertent is indisputable.

To avoid the Court having to oversee plaintiffs' counsel, Plaintiff Lambrecht, in the Proposed Order, has provided a means to efficiently monitor the time and expenses of all derivative plaintiffs' counsel.

## Conclusion

For the foregoing reasons, all of the derivative cases should be consolidated solely for pre-trial purposes. As indicated, because of the material differences in the factual and legal positions of  plaintiff Lambrecht and those advanced by the Demand Futile Plaintiffs, which respective positions are presently irreconcilable, plaintiff Lambrecht is entitled to have her Complaint remain structurally separate from the Consolidated Derivative Complaint as provided in the Proposed Order submitted herewith.

Plaintiff Lambrecht also maintains that Lead Counsel in the Derivative Actions should be designated by the Court in such a fashion that all legitimate interests are presented and that the counsel selected be able to effectively and efficiently pursue those interests. For these reasons, plaintiff Lambrecht respectfully urges the Court to eliminate the self-designated "Executive Committee" and appoint one of its members as Co-Lead Counsel together with

Richard D. Greenfield, Esquire, principal counsel for Ms. Lambrecht. If the Court

is of the view that a single Lead Counsel for the Derivative Actions is the

appropriate way to handle the prosecution of these cases because of her superior

representation of the Merrill Lynch shareholders' interests, she respectfully

suggests that her counsel be appointed as sole Lead Counsel.


Dated: August 8, 2008                     GREENFIELD & GOODMAN, LLC

                              By:    _____/s/_____
                                     RICHARD D. GREENFIELD (RG 4046)
                                     780 Third Avenue
                                     48th Floor
                                     New York, NY 10017
                                     Telephone: (410) 320-5931


                                     CUNEO, GILBERT & LA DUCA, LLP

                              By:    _____/s/_____
                                     JONATHAN W. CUNEO (JC 1112)
                                     507 C Street, N.E.
                                     Washington, D.C. 20002
                                     Telephone: (202) 789-3960

                                     *Counsel for Plaintiff Lambrecht*


                                     19

## <u>CERTIFICATE OF SERVICE</u>

I, William H. Anderson, certify that on August 8, 2008, I served through the Court's ECF system the foregoing Plaintiff Lambrecht's Objection to that Portion of the Consolidation Order of March 12, 2008 with Respect to Leadership of the Derivative Actions upon all counsel registered with that system.

____/s/ William H. Anderson____
William H. Anderson

# EXHIBIT "A"

**GREENFIELD & GOODMAN LLC**
**ATTORNEYS AT LAW**
**780 Third Avenue**
**48th Floor**
**New York, NY 10017**
**(410) 320-5931**
**(410) 745-4149 (Fax)**
email: **whitehatrdg@earthlink.net**

**Richard D. Greenfield**
*Also admitted to the Maryland*
*and Pennsylvania Bars*

January 22, 2008

Board of Directors
Merrill Lynch & Company, Inc.
World Financial Center
New York, NY 10080

                    VIA CERTIFIED MAIL #7004 1350 0005 4788
          5522

Dear Members of the Board:

I am writing to you on behalf of Jaime and Nancy Lambrecht, the owners of shares of the common stock of Merrill Lynch & Company, Inc.("Merrill" or "the Company") currently and at all relevant times. A copy of the relevant page of their brokerage statement showing such ownership is enclosed with this letter with unrelated information redacted therefrom.

This letter is being sent to you to demand that the Company commence legal proceedings to recover its damages from each of you, from Merrill's present and former senior management (including Stan O'Neal and Ahmass Fakahany) who have also been responsible for the wrongdoing referred to herein, against the accounting firm of Deloitte &

1

Touche, LLP ("DT") and all those other persons or entities who have aided and abetted or otherwise participated in such wrongdoing. This letter is also being sent to you to demand on my clients' behalf that Merrill undertake fundamental corporate governance and policy changes to prevent recurrence of the debacle described below, including failures of the Company's internal and external audits.

This letter is being sent to you in the context of, *inter alia*, the revelations over the past three  months of  massive, multi-year mismanagement of the Company, which has led to mark-to-market losses of billions of dollars to date, additional provision for massive losses and the deterioration of Merrill's stockholders' equity of more than $20 billion, primarily due to, according to management, the conduct described herein.

Indeed, there can be no doubt as to responsibility for the Company's near collapse, which was most clearly laid at your doorstep. As Merrill's newly elected Chief Executive Officer, John A. Thain, acknowledged on January 17, 2008: "They shouldn't be taking risks that wipe out the earnings of the entire firm."

Although the Company has indicated that it has only $4.8 billion of remaining exposure to sub-prime related write-downs of assets, according to Merrill's Senior Economist, Kathy Bostiancic: "We've only seen maybe the first wave or two impact, and there's more to come." Indeed, the Company has additional undisclosed exposure not merely to sub-prime related "assets" but additional exposure both on and off Merrill's balance sheet, as well as substantial contingent exposure. Such exposure is a consequence of, among other reasons, Merrill's exposure to investigations and on-going litigation as well as management's violation of its oft-proclaimed promise: "The interests of our clients always come first."

By way of one example, Merrill sold to the City of Springfield, Mass. collateralized debt obligations ("CDOs"), highly inappropriate, illiquid and unsuitable investment vehicles for most state and local governments. Merrill management also widely sold to customers structured investment

vehicles ("SIVs"), another type of financial derivative "product", that has subjected the Company to various investigations by state and other regulators. Merrill's packaging and sale of CDOs and SIVs have subjected the Company to massive liabilities to purchasers of such "products," none of which is reflected in Merrill's financial statements.

Based upon an analysis of the Company's financial statements as of September 30, 2007, it is believed that, even with the reduction of shareholders' equity of $8.4 billion as of such date, management intentionally understated such reduction. Such understatement and deception continued as revealed, in part, by the Company's disclosures of January 17, 2008, when it reported a further $9.8 billion loss for the quarter ended December 31, 2007 and $16.7 billion in write-downs on, *inter alia*, mortgage-related investments and leveraged loans. This financial debacle was caused by a systemic failure of risk management and lax credit standards during the last several years at the Board level and within senior management, all of which has caused the Company to suffer billions of dollars in damages as described herein and untold billions going forward, leaving it perilously short of capital and causing it to go hat-in-hand to foreign investors.

In fact, each of you and former Chairman and CEO Stan O'Neal knew or should have known that, as presently structured, the Board was unable to properly supervise the Company's operations and management (which had grown to the point of being uncontrollable), reduce its financial exposure to risk and make sure that its publicly disseminated financial statements were prepared in compliance with Generally Accepted Accounting Principles ("GAAP"), which they were not. Indeed, the Company has yet to fully recognize the financial impact of the high-risk strategies pushed by Mr. O'Neal and readily acquiesced in by each of you.

All of this is in stark contrast to the statement made publicly by former CEO O'Neal on February 22, 2007, only months before the revelations disclosed above and his "retirement":

3

> "I am pleased to report that, by
> virtually any measure, Merrill Lynch
> completed the most successful year in its
> history---financially, operationally, and
> strategically."

This bold statement, while true in certain respects, was false and misleading inasmuch as former CEO O'Neal and his colleagues in Merrill's senior management had built a "house of cards" built in part on the construction and sale of esoteric financial instruments that were based upon, *inter alia,* sub-standard and highly risky mortgage loans and their securitized brethren, CDOs and SIVs, some of which the Company retained for its own portfolio. Notwithstanding this fact known or which should have been known to each of you, in November 2007, Merrill's management issued a news release announcing: "Why Merrill Lynch is Still Bullish on Merrill Lynch" which proclaimed falsely that the Company's "financial position and liquidity remain strong." By such statements, in which you undoubtedly acquiesced, the Company was caused to continue to misrepresent its actual financial condition, which was deteriorating at an alarming rate, and to conceal the fact that its assets, earnings and shareholders' equity were materially overstated.

By acting as such and permitting such manipulations and concealment to take place, you, senior management and the Company's auditor, DT, have caused Merrill to violate federal disclosure laws and subjected it to litigation by those who purchased its securities and various proprietary derivative "products" during the period of such wrongdoing. In turn, this has subjected and will subject the Company to expenses of more billions of dollars to resolve the claims of such purchasers.

Notwithstanding the fact that the Company's shareholders have been "Merrill Lynched" by the conduct described herein, you wasted corporate assets by awarding Mr. O'Neal with a compensation package at the time of his appointment as CEO and thereafter which failed to align his interests with those of Merrill and its shareholders. Despite leaving the Company as a financial "basket case," Mr. O'Neal will receive approximately $161.5 million as a "going away" present.

4

Each of you and senior management was aware of or should have been aware of the consequences to the Company of following Mr. O'Neal's "risk-be-damned" strategies and the damages they were likely to cause Merrill, its shareholders and its customers eventually. These massive damages, which are first beginning to surface, are likely to increase substantially as the Company is forced to acknowledge further the reality of its contingent liabilities referred to above, the remainder of its highly questionable loan/derivatives portfolio burdened with excessive credit risks and its off-balance sheet transactions. Also, due to the lowering of Merrill's own credit ratings in the wake of the foregoing debacle, it will suffer additional damages as its cost of capital has risen and will rise further. Indeed, in obtaining $6.2 billion in new capital in December from, *inter alia*, Temasek Holdings Pte. Ltd. and the mutual funds advised by Davis Selected Advisers LP, Merrill shareholders' equity has been greatly diluted as a result of the terms the Company has been forced to yield to these most recent "bail-out" investors. Press reports indicate that Merrill is seeking at least another $4 billion in new capital from a Middle Eastern sovereign investment fund. In describing such "hat-in-hand" searches for new capital, a respected analyst at Sanford C. Bernstein said that shareholders "view this as the kind of capital you raise *in extremis*."

Your errors and omissions, as well as those of senior management of the Company and DT, have caused massive damages to Merrill and its shareholders.

On behalf of my clients, I hereby demand that Merrill commence legal proceedings to recover its damages from each present and former member of its Board of Directors who held such position during the period which the conduct described above took place; those senior officers of the Company who carried out and/or participated in the mismanagement referred to above and thereafter covered up such mismanagement and its consequences; and all those who aided or abetted the Company's officers and directors in carrying out the wrongdoing referred to above. These include, but are not limited to, various originators of high risk loans and/or packagers thereof, Merrill's

5

purportedly independent auditor, DT, and those firms which directly or indirectly provided so called "appraisals" and/or credit ratings upon which the Company and/or the originators of the loans referred to above relied, directly or indirectly, to the Company's detriment. As you know, as a result of the misconduct of its officers and directors and other culpable persons, Merrill has already sustained substantial damages and continues to be subject to further damages in the billions of dollars as well as the massive legal and other expenses of defending against and resolving claims made against the Company by purchasers of its securities.

Similarly, to the extent that any of the foregoing persons has been unjustly enriched at the expense of the Company, including those entities and persons who have received fees and/or other compensation that was excessive under the circumstances referred to above, I demand that the Merrill commence litigation against them seeking injunctive relief which, *inter alia*, requires them to account to it and repay any such unjust enrichment together with the earnings thereon.  Included within such unjust enrichment are the proceeds of the exercise of any stock options by senior officers during the relevant period while in possession of material inside information, as well as any salaries and bonuses received by such senior officers (including the compensation paid and to be paid to Mr. O'Neal) and, in the case of DT, fees paid to it during the relevant period for its purported audits of the Company's financial statements.

The demands made herein and the fact that they have been made should not be taken to mean that any of you is independent, dis-interested or can properly and objectively deal with such demands, which you cannot. Each of you is personally implicated in the alleged wrongdoing by, *inter alia*, your failure to date to cause Merrill to appropriately pursue all of its claims arising from the matters referred to herein. Should you not act to protect Merrill's valuable claims as set forth herein, you will be engaging in further waste of its assets.  The demands have been made because, if they had not been, your counsel and/or counsel for the Company would seek to have dismissed any shareholder's derivative litigation that might be commenced.

I look forward to hearing from you or your counsel within thirty days.

Sincerely yours,

/s/

Richard D. Greenfield

RDG:gw
Enclosure

# EXHIBIT "C"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re MERRILL LYNCH & CO, INC. SECURITIES, DERIVATIVE AND ERISA LITIGATION** | **Master File No. 07cv9633 (LBS) (AJP)(DFE)** |

**This Document Relates to:**

| | |
|---|---|
| **Derivative Action 07cv9696(LBS)(AJP)(DFE) and N.A. Lambrecht v. O'Neal, *et al*. 08 cv 6582 (LBS)(AJP)(DFE)** | **Civil Action No. 08cv6582 (LBS)(AJP)(DFE)** |

## [PROPOSED]

## <u>DERIVATIVE ACTIONS CONSOLIDATION ORDER</u>

NOW, this __day of August, 2008, upon consideration of plaintiff

Lambrecht's Objection to a Portion of Consolidation Order of March 12,

2008 (the "Order") and Leadership of Derivative Actions, it is hereby

ORDERED that in the interests of judicial economy and in recognition of

the materially different legal and factual positions of plaintiff Lambrecht

from those of the other plaintiffs suing derivatively ("Demand Futile

Plaintiffs") on behalf of Nominal Defendant Merrill Lynch & Co., Inc.

("Merrill Lynch"):

## CONSOLIDATION AND MODIFICATION OF THE ORDER

1. ¶¶ 4 and 5 of the Order are hereby withdrawn and the Order generally is modified to reflect the elimination of the term "the Plaintiffs' Executive Committee in the Derivative Action" and replace it with the term "Co-Lead Counsel in the Derivative Actions."

2. The *Lambrecht* Complaint shall not be consolidated with the pre-existing Derivative Action or the Consolidated Amended Complaint therein. The prosecution and defense of the *Lambrecht* action shall nevertheless be coordinated, for pre-trial purposes, with the Derivative Actions commenced by the Demand Futile Plaintiffs so as to minimize the burdens on the Court and all parties.

3. Pursuant to Fed. R. Civ. P. 42(a), the Derivative Actions commenced by the Demand Futile Plaintiffs shall remain consolidated into docket number 07cv9696 (LBS)(AJP)(DFE) for all purposes including, but not limited to, discovery, pretrial proceedings and trial ("Demand Futile Derivative Action"). The Consolidated Amended Complaint in the Demand Futile Derivative Action shall remain the operative pleading therein.

## <u>CO-LEAD COUNSEL IN THE DERIVATIVE ACTIONS</u>

4.  The Court appoints Richard D. Greenfield, Esquire, representing

    plaintiff Lambrecht, and_____, Esquire, representing the

    Demand Futile Plaintiffs as Co-Lead Counsel in the Derivative

    Actions.

5.  Defendants' Counsel may rely upon all agreements made with

    plaintiffs' Co-Lead Counsel in the respective *Lambrecht* and Demand

    Futile Derivative Actions and such agreements shall be binding on the

    respective plaintiffs.

## <u>FURTHER PROCEEDINGS</u>

6.  With respect to the *Lambrecht* case, the parties thereto are directed to

    meet and confer within 14 days of this Order with respect to whether

    defendants or any of them will respond to the Complaint at this time,

    move against it or present to the Court another proposal for further

    proceedings therein.

## <u>CONTEMPORANEOUS TIME AND EXPENSE REPORTS</u>

7.  Plaintiffs' counsel who anticipate seeking an award of attorneys fees

    from the Court in the Derivative Actions should they be resolved

    successfully shall maintain a daily record of time spent and expenses

incurred in connection with this litigation, indicating with specificity

the hours, location, and particular activity (such as "conduct of

deposition of A.B."), and submit such records to Co-Lead Counsel in

such form and manner as they may designate. The failure to maintain

and submit to Co-Lead Counsel such records will be grounds for

denying Court-awarded attorney fees, as will an insufficient

description of the activity (such as "research" or "review of

correspondence").

SO ORDERED.

Dated: New York, New York
August __,2008                    _____

                                        United States District Judge

# GREENFIELD & GOODMAN LLC
### 780 Third Avenue
### 48th Floor
### New York, NY 10017
### (410) 320-5931
#### whitehatrdg@earthlink.net

### Firm Biography

The Firm concentrates its practice in complex litigation and, particularly, in corporate governance, banking, consumer rights and shareholder litigation.  As a direct result of the efforts of the Firm and its predecessors, many millions of dollars have been recovered for defrauded shareholders and other persons injured by illegal corporate activities. The Firm and its predecessors have also been responsible for obtaining a number of particularly noteworthy judicial opinions which have not only strengthened consumer and shareholder rights generally, but substantially aided in the prosecution of complex litigation to preserve such rights.

The Firm serves as Lead Counsel or Co-Lead Counsel for plaintiffs in class actions pending in courts located in, inter alia, Pennsylvania, New Jersey, Missouri, New York and California and, in addition, represents individuals with substantial personal claims.

RICHARD D. GREENFIELD has been admitted to practice before the Supreme Court of the United States, the Courts of Appeals for the Second, Third, Fifth, Ninth and Eleventh Circuits, various federal district courts, as well as the Courts of the Commonwealth of Pennsylvania, the State of New York and the State of Maryland.  Mr. Greenfield is a 1965 graduate of the Cornell Law School, where he was awarded a J.D.. In addition, he has earned degrees in Accounting (B.S. Queens College) and Business Administration (M.B.A. Columbia University Graduate School of Business).

Mr. Greenfield is thoroughly experienced in banking, securities and consumer litigation, having served as Lead or Co-Lead Counsel for plaintiffs in class actions brought on behalf of trust beneficiaries against major trustee-banks, in  shareholder class and derivative actions alleging violations of the federal securities laws and/or breaches of corporate governance standards as well as in a wide variety of banking and consumer fraud cases. Mr. Greenfield founded and was Senior Partner in a 48 lawyer Pennsylvania-based law firm that specialized in such litigation; it was disbanded in 1993.

Mr. Greenfield has achieved national and international recognition for his achievements and, in particular, for wide-ranging litigation involving the operations of banks, including features on the British Broadcasting Corporation's Money Programme; American Broadcasting Company's Business World; front-page articles in The Wall Street Journal; and a substantial article in The New York Times; a cover story in Banker's Monthly; and profile articles in Florida Trend, The American Lawyer, Philadelphia Business Journal, The Philadelphia Inquirer, Dagens Industri (Sweden's equivalent of The Wall Street Journal), American Banker, St. Petersburg Times, United States Banker, Ft. Lauderdale Sun-Sentinel and the Palm Beach Daily News. He is often sought by the business and legal media for comment on

a wide variety of corporate, securities and shareholder rights topics and has been frequently quoted in every major business and law newspaper and periodical. In 1989, he was selected by The National Law Journal as one of 50 lawyers under the age of 50 who achieved national recognition for their professional accomplishments. In 1991, he was selected by The National Law Journal as one of the nation's 100 most influential lawyers.

Mr. Greenfield has been a periodic member of the faculty of the Practising Law Institute and has participated as a lecturer and panelist most recently in the programs New Trends in Securities Litigation as well as PLI's Securities Litigation Institute. He has also been a guest speaker at the Annual Meeting of the Conference of Actuaries in Public Practice held in Seattle, Washington, where he presented a paper entitled The Noose Tightens - Disclosure of Pension Liabilities Under The Federal Securities Laws, which was subsequently published. He has addressed Annual Conventions of the Association of Trial Lawyers of America and numerous programs of ALI-ABA and the Litigation Section of the American Bar Association, where he has spoken on various topics including class actions, securities fraud litigation, corporate governance, discovery in commercial litigation, attorneys fees and RICO litigation against accountants and lawyers, among others.  He has been a guest speaker at programs of the state bars of Pennsylvania, Minnesota and Georgia and by other sponsors including, inter alia, The Commonwealth Club of California, Executive Seminars, Prentice-Hall, etc. He has been invited to speak on complex litigation and class actions at a retreat of one of the nation's largest defense-oriented law firms. More recently, Mr. Greenfield was a guest speaker at The Palm Beach Round Table, where the topic of his remarks was Corporate Kleptocracy – The Failure of Corporate Governance. He has also been a featured speaker in February and July 2005 and July 2006 at ALI-ABA programs in New Orleans, San Francisco and Chicago, where he spoke on the representation of beneficiaries in litigation against corporate fiduciaries.

Mr. Greenfield was a lecturer on bank fraud litigation at the Eighth Annual Banking Law Institute sponsored by the Texas Tech School of Law in Houston, and on securities litigation at the Minnesota Institute of Legal Education's annual "Lying, Cheating and Stealing" Seminar in Minneapolis. He has organized and presented a program on Federal Class Actions for the Federal Bar Association. He has been the featured speaker at Institutional Investor Institute's "Spring Pension Fund Roundtable" in New York and at the Inner Circle of Advocates' Annual Meeting in San Diego. He has been a member of the Board of Advisors of the Banking Law Review and has authored a chapter on class actions and other representative litigation in a desk book published by the New York State Bar Association entitled Federal Civil Practice, and its up-dates. He was a featured speaker at the Young Presidents Organization program on corporate litigation held in the United States Courthouse in Philadelphia presided over by the Honorable Stewart Daltzell and the Progressive Risk Management program on avoidance of shareholder litigation held in Sanibel Island, Florida. In 1996, Mr. Greenfield was a guest speaker at The International Biotechnology Conference in Philadelphia, where he spoke on the impact of the Private Securities Litigation Reform Act of 1995 and at the Pennsylvania Bar Institute's 2000 and 2001 programs where he addressed employees of the Law Department of the City of Philadelphia as well as members of the private bar on "Affirmative Municipal Litigation." He has also been a guest lecturer at the Wharton School of the University of Pennsylvania (leveraged buy-outs), Rutgers University School of Business (mergers and

acquisitions) and the Temple University School of Law (shareholder derivative litigation). He has also been a guest lecturer at the University of Florida Graduate School of Business in March, 2007, speaking on the subjects of corporate governance and shareholder litigation.

In July 2004, Mr. Greenfield was a guest lecturer for the Federal Financial Institutions Examination Council, the governmental training body for bank examiners of the FDIC, the Comptroller of the Currency and the Federal Reserve System, speaking on the subject of banks' conflicts of interest in the performance of their fiduciary responsibilities to beneficiaries. He is also Special Advisor to the Board of The Corporate Governance Institute of Florida Atlantic University. Mr. Greenfield was a guest speaker at the 24th International Symposium on Economic Crime held in September 2006 at Cambridge University in England speaking on the use of civil litigation in connection with the commission of economic crime.

Mr. Greenfield has been a member of the Editorial Advisory Board of Class Action Reports, for which he authored an article entitled "Rewarding The Class Representative: An Idea Whose Time Has Come," which appeared in the First Quarter, 1986 issue. He also authored "No More Chastity Belts: U.S. Needs Federal Corporate Code" for the Legal Times as well as many other articles for this publication and its affiliates in the American Lawyer Newspaper Group and has been a member of its National Board of Contributors. He has also written articles with respect to the fiduciary duties of financial institutions serving as trustees. He has been a member of the Federal Courts Committee of the Philadelphia Bar Association. He has also been active as Co-Chairman of the Class and Derivative Action and Securities Litigation sub-committees of the American Bar Association's Section on Litigation, and the Federal Bar Council of New York City.

Mr. Greenfield has also served as a Director of Equimark Corporation, a $2.5 billion, New York Stock Exchange listed bank holding company (prior to its acquisition) and two of its subsidiaries, Equibank (Delaware) N.A. and Liberty Savings Bank, based in Philadelphia.

Mr. Greenfield has been a Trustee or Director of the Philadelphia Museum of Art, the Hirshhorn Museum & Sculpture Garden, the Jewish Family and Children's Service of Greater Philadelphia, the Philadelphia Bar Foundation, the Public Interest Law Center of Philadelphia, Palm Beach Opera, the Philadelphia Festival of the Arts, HomeSafe of Palm Beach County, Inc., Florida Philharmonic, Ballet Florida and Legal Aid Society of Palm Beach County, Inc. He has been a member of the National Committee for the Performing Arts of the Kennedy Center and the Collectors Committee of the National Gallery of Art in Washington, D.C.

MARGUERITE R. GOODMAN, a former member of the Firm, has been admitted to practice before the Supreme Court of the United States, the Courts of the Commonwealth of Pennsylvania, the Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

Ms. Goodman is a 1978 graduate of the Dickinson School of Law. She was on the First Place Team and won the American College of Trial Lawyers Award for Best Oral Argument at the 1977 National Appellate Moot Court Competition. She was selected for Law

*Review but declined for family reasons. She also holds a Masters degree in Communications from Cornell University (M.A., 1963) and a Bachelors degree from Brooklyn College (B.A., 1961).*

*Ms. Goodman has substantial experience in the prosecution and defense of complex commercial litigation, first with Pepper, Hamilton & Scheetz in Philadelphia, where she handled commercial, products liability, antitrust, regulatory and employment discrimination litigation. Thereafter, she was employed by the City of Philadelphia in various positions including serving as General Counsel to the Water Department and Deputy Solicitor for Enforcement, where she headed an 85-person division representing the City as plaintiff and increased its annual recovery from such litigation from $10 million to $28 million.*

*Following her employment by the City, Ms. Goodman became a Shareholder of Kohn, Savett, Klein & Graf, P.C. in Philadelphia, where she continued her commercial litigation practice, handling class action, contract, antitrust, and construction matters. In 1991, she began a solo commercial litigation practice specializing in shareholder, derivative and consumer class action litigation.*

*Ms. Goodman was the principal drafter, "Defense of Public Liability Litigation Arising out of Nuclear Accidents," Nuclear Litigation 187 (PLI 1979), the author of Note, Adoption of Walker, 81 Dickinson Law Review 857 (1977) and the editor and principal drafter, Newsletter, American Federation of Investors & Consumers.*

*Ms. Goodman has been a member of the Board of Directors of Planned Parenthood, the Florida Philharmonic, the Armory Art Center, Miami City Ballet, the Community Chest/United Way and Junior Achievement International.*

*Ms. Goodman and Mr. Greenfield are husband and wife.*

*December 29, 2007*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE: AOL TIME WARNER
SHAREHOLDER LITIGATION

MASTER FILE NO. 02-CV-6302

This Document Relates to All Actions

---

WILLIAM FULLERTON and
HARDING WILLINGER,
Derivatively on Behalf of Nominal
Defendant TIME WARNER, INC.,

Civil Action No. 03 CV 9860

       Plaintiffs,

    v.

JAMES L. BARKSDALE, et al,

       Defendants,

    and

JURY TRIAL DEMANDED

TIME WARNER, INC.,

       Nominal Defendant.

---

### ████ PRE-TRIAL ORDER NO. 2

NOW, this 26 day of May_____, 2004, upon the Motion of Plaintiffs

Fullerton and Willinger to Modify Unopposed Pre-Trial Order No. 1, it is hereby ORDERED that

in the interests of judicial economy and the materially differing legal and factual positions of the

various plaintiffs relative to Nominal Defendant Time Warner, Inc., formerly known as AOL

Time Warner, Inc. ("TW"):

    1.    The Motion of Plaintiffs Fullerton and Willinger is GRANTED.

## MASTER FILE, MASTER DOCKET AND SEPARATE ACTION DOCKETS

2.    The caption of this action shall be "Time Warner Shareholder Derivative Litigation" and the files of this action shall be maintained in one file under Master File No. 02-CV-6302. Any other shareholder derivative actions now pending or hereafter filed in this District which arise out of the same facts as alleged in the above-identified cases shall be coordinated for all purposes if, as, and when they are drawn to the Court's attention.

3    A Master Docket and a Master File are hereby established for the consolidated proceedings in all of the actions to be coordinated herein and in all other cases filed in, or transferred to this Court and coordinated herewith (hereinafter the "Consolidation Actions"). Entries in said Master Docket shall be applicable to the Coordinated Actions as more fully set forth below. Separate dockets shall also be maintained for each of these Coordinated Actions, and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order.

4.    When a pleading is filed and the caption, pursuant to ¶9, infra, shows that it is to be applicable to "All Actions," the Clerk shall file such pleading in the Master File and note such filing in the Master Docket. No further copies need be filed or docket entries made.

5.    When a pleading is filed and the caption, pursuant to ¶9, infra, shows that it is to be applicable to fewer than all of these coordinated actions (e.g. to individual actions; actions by TW shareholders who made demands on TW's Board of Directors), the Clerk need file such pleading only in the Master File but nonetheless shall note such filing in both the Master Docket and the docket of each such action.

2

## NEWLY FILED OR TRANSFERRED ACTIONS

6.    When a case which properly belongs as part of <u>Time Warner Shareholder Derivative Litigation</u> is hereafter filed in this Court, or transferred here from another Court and assigned to Judge Kram, the Clerk of this Court shall:

(a)    Place a copy of this Order in the separate file for such action.

(b)    Mail to the attorneys for the plaintiff(s) in the newly-filed or transferred case a copy of this Order and direct that this Order be served upon or mailed to any new defendant(s) in the newly-filed or transferred case, or their counsel.

(c)    Make an appropriate entry in the Master Docket. This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any cases which might properly be coordinated as part of <u>Time Warner Shareholder Derivative Litigation</u>.

7.    This Pre-Trial Order No. 2 shall supersede Pre-Trial Order No. 1 and shall apply to each of the shareholder derivative actions presently on file or which shall be subsequently filed in this Court or transferred to this Court which is related to <u>Time Warner Shareholder Derivative Litigation</u> unless a party objecting to the coordination of such case or to any other provision of this Order shall, within 10 days after the date upon which a copy of this Order is mailed to counsel for such party, file an application for relief from this Order or any provision herein, and this Court deems it appropriate to grant such application.

## CAPTION OF CASES

8.    Every pleading filed in this action, or in any actions subsequently consolidated herewith shall bear the following caption:

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

TIME WARNER SHAREHOLDER                    Master File No. 02-CV-6302 (SWK)
DERIVATIVE LITIGATION

This Document Relates To:

_____

9.    When a pleading is intended to be applicable to all actions to which this Order is applicable, the words "All Actions" shall appear immediately after the words "This Document Relates To:" in the caption set out above. When a pleading is intended to be applicable only to some, but not all, of such actions, this Court's docket number for each individual action to which the paper is intended to be applicable and the last name of the first-named plaintiff in said action shall appear immediately after the words "This Document Related To:" in the caption described "02-CV6302."

## APPOINTMENT OF LIAISON AND LEAD COUNSEL

10.    The leadership structure of plaintiffs' conduct of these actions and in any actions subsequently coordinated herewith, shall consist of:

## NO "DEMAND" CASES

Liaison and Lead Counsel in the cases where no demand has been made on TW's Board of Directors pursuant to Rule 23.1, Fed.R.Civ.P as set forth below:

LEE S. SHALOV (LS 7118)
SHALOVE STONE & BONNER
485 Seventh Avenue (Suite 1000)
New York, NY 10018
(212) 239-4340

4

Plaintiffs' Liaison Counsel
("No Demand" Cases)

JOHN G. EMERSON, JR.
THE EMERSON FIRM
P.O. Box 25336
Little Rock, AR 72221-5336
(501) 907-2555
(501) 907-2556 (fax)

Plaintiffs" Lead Counsel
("No Demand" Cases)

## "DEMAND" CASES

Co-Lead Counsel in the cases where demand(s) have been made on TW's Board of Directors

pursuant to Rule 23.1, Fed.R.Civ.P:

MORRIS AND MORRIS LLC
COUNSELORS AT LAW
Karen L. Morris (KM-2814)
1105 N. Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400
(302) 426-0406 (fax)

GREENFIELD & GOODMAN LLC
Richard D. Greenfield (RG-4046)
24579 Deep Neck Road
Royal Oak, MD 21662
(410) 745-4149
(410) 745-4158 (fax)

Plaintiffs' Co-Lead Counsel
("Demand" Cases)

      11.   Plaintiffs' Liaison Counsel in the "No Demand" Cases also shall be

available and responsible for communications to and from this Court, including the

distribution to counsel of Orders and other directions from the Court. Plaintiffs' Liaison

Counsel shall be responsible for the creation and maintenance of a master service list of all parties and their respective counsel.

12. Plaintiffs' Lead Counsel in the respective "Demand" and No Demand" cases shall have authority to speak for plaintiffs in matters regarding pre-trial procedure and settlement negotiations in their respective cases, and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort.

13. Plaintiffs' respective Lead Counsel shall be responsible for the coordination of all activities and appearances on behalf of plaintiffs in their respective "Demand" and "No Demand" cases, and for the dissemination of notices and orders of this Court. No motion, request for discovery, or other pre-trial proceedings shall be initiated or filed by any plaintiffs except through plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases.

14. Defendants' counsel may rely upon all agreements made with plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases (or other duly authorized representatives of the plaintiffs therein), and such agreements shall be binding on the respective plaintiffs.

15. Defendants shall effect service of papers on plaintiffs by serving a copy of same on plaintiffs' Lead Counsel in the respective "Demand" and "No Demand" cases by overnight mail service or hand delivery unless otherwise agreed. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight mail service or hand delivery, unless otherwise agreed.

## SCHEDULE OF PROCEEDINGS

16.    This case is related in some ways with the consolidated securities class actions pending before this Court as "IN RE AOL TIME WARNER, INC., SECURITIES LITIGATION" under No. 02-CV-5575 (SWK).

17.    The "No Demand" cases are hereby stayed during the pendency of this Court's ruling in No. 02-CV-5575 (SWK) on any defendants' motion to dismiss the consolidated class action complaint in that action.  In the event that the motion to dismiss the consolidated securities class action is denied, the stay of the "No Demand" shareholder derivative action shall be vacated thirty (30) days thereafter. Plaintiffs in the "No Demand" shareholder derivative actions shall then file an Amended Complaint ("Amended Complaint") no later than 75 days from the date of the entry of an order denying defendants' motion to dismiss the consolidated securities class action complaint in No. 02-CV-5575, unless otherwise agreed between the parties, which shall be deemed the operative complaint in the "No Demand" derivative cases, superseding all complaints filed in such cases, or any of the "No Demand" actions to be coordinated hereunder or in any related cases. Defendants shall have 60 days after the filing and service of the Amended Complaint in the "No Demand" cases to answer or otherwise respond thereto. In the event that defendants file any motions directed at the Amended Complaint, counsel are to meet and confer and report to the Court with regard to an acceptable briefing and hearing schedule for such motions.

18.    With respect to the "Demand" case or cases, the parties thereto are directed to meet and confer with respect to whether defendants will respond to the

Complaint at this time, move against it or present to the Court some other proposal for

further proceedings.

Shirley Wohl Kram

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT COURT
JUDGE

dated: May 25, 2004
New York, N.Y.

Submitted by:

January 20, 2004

MORRIS AND MORRIS LLC
COUNSELORS AT LAW

Karen L. Morris

Karen L. Morris (KM-2814)            /KLM/
1105 N. Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400
(302) 426-0406 (fax)

GREENFIELD & GOODMAN LLC

Richard D. Greenfield

Richard D. Greenfield (RG-4044)      /RDM/
24579 Deep Neck Road
Royal Oak, MD 21662
(410) 745-4149
(410) 745-4158 (fax)

ANN MILLER, LLC
Ann Miller
834 Chestnut Street, Suite 206
Philadelphia, PA 19107
(215) 238-0468
(215) 574-0699 (fax)

Counsel for Plaintiffs Fullerton and Willinger



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

MAUREEN HENRY and                           )
E.L. GREENFIELD, Derivatively on            )
Behalf of Federal Home Loan                 )
Mortgage Corporation,                       )
                                            )
                    Plaintiffs,             )    CASE NO. 03-1539 A (Cacheris)
                                            )
            v.                              )
                                            )
LELAND C. BRENDSEL, DAVID GLENN,            )
JOHN GIBBONS, VAUGHN CLARK                  )
and GREGORY PARSEGHIAN,                     )
                                            )
                    Defendants,             )
                                            )
            -and-                           )
                                            )
FEDERAL HOME LOAN MORTGAGE                  )
CORPORATION,                                )
                                            )
                    Nominal Defendant.      )
                                            )

## [PROPOSED] ORDER
## APPOINTING LEAD PLAINTIFFS AND LEAD COUNSEL

WHEREAS, this action is brought by Plaintiffs Maureen Henry and E.L.

Greenfield ("Plaintiffs") derivatively on behalf of Federal Home Loan Mortgage Corp.

("Freddie Mac"); and

WHEREAS, Plaintiffs have served the Complaint in this action; and

WHEREAS, Freddie Mac has served an Answer to the Complaint; and

WHEREAS, Plaintiffs, having filed the first and currently only derivative action

against Freddie Mac in this District and Plaintiff E.L. Greenfield being the only plaintiff in

any derivative action to have made a demand on Freddie Mac's Board of Directors

pursuant to Va. Code Ann. § 13.1-672.1B and Rule 23.1, Fed. R.Civ. P., submit that

1

they should be appointed Lead Plaintiffs in connection with any derivative litigation
pending in this District and that their counsel be appointed Lead Counsel in this action;

IT IS HEREBY ORDERED, for good cause shown, as follows:

1.    Plaintiff Greenfield is hereby appointed Demand Made Lead Plaintiff and
Maureen Henry is hereby appointed Demand Excused Lead Plaintiff (collectively "Lead
Plaintiffs") for the derivative claims asserted herein for the benefit of Freddie Mac.

2.    Lead Plaintiffs' selection of Lead Counsel is hereby approved.
Accordingly, Richard D. Greenfield, Esq., is hereby appointed Demand Made Lead
Counsel and Jonathan W. Cuneo, Esq., is hereby appointed Demand Excused Lead
Counsel (collectively "Lead Counsel") with respect to the derivative claims asserted on
behalf of Freddie Mac in this litigation.

3.    Lead Counsel are vested by the Court with the following responsibilities
and duties:

a.    To coordinate the initiation and conduct of discovery proceedings;

b.    To coordinate the preparation and filing of subsequent pleadings;

c.    To coordinate the briefing and argument of motions;

d.    To initiate and conduct all settlement negotiations with counsel for the
Defendants; and

e.    To perform such other duties, including with respect to discovery, as may
be negotiated with Defendants or as may be expressly authorized by further order of the
Court.

4.    Lead Counsel shall perform work assignments in such a manner as to
conduct the orderly and efficient prosecution of this litigation and to avoid duplicative or
unproductive effort.

5.    Lead Counsel shall have the authority to speak for the Lead Plaintiffs in
matters regarding pretrial procedure and settlement negotiations. Defendants counsel
may rely upon all agreements made with the Lead Counsel or other duly authorized

2

representative(s) of Lead Plaintiffs and such agreement shall be binding on Lead Plaintiffs.

6. No motion, request for discovery or other pretrial proceeding by or on behalf of Plaintiffs shall be initiated or served by anyone except through Lead Counsel.

SO ORDERED this 12 day of March, 2004.

U.S.D.J.

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via first class

mail on this 1st day of April, 2004, to the following:

Lee Shalov (LS7118)
Shalov Stone & Bonner
Plaintiffs Liason Counsel
485 Seventh Avenue, Suite 1000
New York, New York 10018
(212) 239-4340

John G. Emerson
Emerson Poynter LLP
P.O. Box 164810
Little Rock, AR 72216-4810
(501) 907-2555

Peter Barbur (PB 9394)
Rachel G. Skaistis
Cravath Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, New York 19919-7475
(212) 474-1000

Richard D. Greenfield (RG 4046)
Greenfield & Goodman, LLC
24579 Deep Neck Road
Royal Oak, MD 21662
(410) 745-4149

Karen L. Morris
Morris and Morris LLC
1105 N. Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400

Daniel Cobrinik (DC6406)
Attorney for Laurence Nathanson
475 Park Avenue South
16th Floor
New York, New York 10016
(212) 725-6888

DATED:  April 1, 2004